**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **SANDRA BREWSTER,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-20-CV-00314-ATB** |
| | § | |
| **KILOLO KIJAKAZI, COMMISSIONER** | § | |
| **OF THE SOCIAL SECURITY** | § | |
| **ADMINISTRATION,** | § | |
| **Defendant.[1]** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is a civil action seeking judicial review of an administrative decision.  Jurisdiction is predicated upon 42 U.S.C. § 405(g).  Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff Sandra Brewster ("Brewster") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  For the reasons set forth below, the Court orders that the Commissioner's decision be **AFFIRMED**.

# I.    PROCEDURAL HISTORY

On February 14, 2019, Brewster filed applications for SSI and DIB, alleging a disability onset date in both applications of January 1, 2019.  (R. 58).  Brewster's applications were denied initially on May 28, 2019, and upon reconsideration on September 24, 2019.  (R. 58).  An

---

[1] Kilolo Kijakazi replaced former Commissioner Andrew Saul to become the Acting Commissioner of the Social Security Administration in July 2021.  *See Acting Commissioner: Dr. Kilolo Kijakazi*, Social Security, https://www.ssa.gov/agency/commissioner/ (last visited Sep. 3, 2021).

Administrative Law Judge ("ALJ") held a hearing on May 6, 2020.  (R. 58).  After the hearing, Brewster amended her onset date from January 1, 2019, to June 13, 2019.  (R. 58, 87, 297).  The ALJ issued a decision ("Decision") on June 16, 2020, finding that Brewster was not disabled.  (R. 71).  On November 23, 2020, the Appeals Council denied Brewster's request for review of the ALJ's Decision.  (R. 1-5).

## II.   ISSUE

Plaintiff presents the following issues for review:

1.      Whether "the ALJ erred in his analysis by cherry-picking evidence to dismiss the extensive medical evidence of the Steven[s-]Johnson Syndrome and the cane prescription." (ECF No. 19, p. 2).

2.      Whether "the ALJ erred in disregarding the extensive medical evidence of chronic pain syndrome."  (*Id.* at 4).

## III.   DISCUSSION

### a.   Standard of Review

This Court's review is limited to a determination of whether the Commissioner's Decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is more than a mere scintilla and less than a preponderance."  *Masterson*, 309 F.3d at 272 (citation and internal quotes omitted).  The Commissioner's findings will be upheld if supported by

substantial evidence. *Id.* A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam) (citation and internal quotes omitted).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's Decision. *Masterson*, 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (citation and internal quotes omitted); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

### b.   Evaluation Process

The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520(a)(4). Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical Vocational Guidelines of the regulations, by vocational expert ("VE") testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). Once the Commissioner makes the requisite showing at step five, the burden shifts back to the claimant to rebut the finding

that there are jobs that exist in significant numbers that the claimant could perform.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

In the present case, the ALJ found that Brewster "ha[d] not engaged in substantial gainful activity since June 13, 2019, the amended alleged onset date."  (R. 61).  At step two, the ALJ found that Brewster "has the following severe impairments: degenerative disc disease, migraines, obstructive sleep apnea, obesity, major depressive disorder, and anxiety."  (R. 61).  At step three, the ALJ found that Brewster did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 61).

Before proceeding to step four, the ALJ found that Brewster:

has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally balance, stoop, kneel, crouch, and crawl.  She can occasionally climb ramps and stairs, but should never climb ladders, ropes, and scaffolds.  The claimant is able to understand, carry out, and remember simple, routine instructions, make simple decisions, and can perform job tasks independently, appropriately, and at a consistent pace in goal-oriented work in which job tasks do not have to be completed within a strict deadline.  The claimant can occasionally interact with the public, supervisors, and co-workers, and is able to respond appropriately to occasional, routine, changes in the work setting.

(R. 63-64).  At step four, the ALJ determined that Brewster "is unable to perform any past relevant work."  (R. 69).  Subsequently, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (R. 70).  Accordingly, the ALJ found that Brewster was not disabled within the meaning of the Social Security Act from June 13, 2019, through the Decision date.  (R. 71).

c.      **Analysis[2]**

1.      ***Brewster's Stevens-Johnson Syndrome***

A.      ***The ALJ Did Not Err in Finding Brewster's Stevens-Johnson Syndrome Non-Severe***

Brewster argues that "[i]n his Step 3 analysis, the ALJ erred in dismissing the record of medical evidence with . . . circular logic" and that "[t]he medical expert's testimony was wholly insufficient to support the ALJ's Step 3 analysis to support his non-severe finding for the Stevens-Johnson Syndrome." (ECF No. 19, p. 3). While referring to "Step 3," Brewster cites to the ALJ's step two analysis and argues that the ALJ should have found that her Stevens-Johnson Syndrome was a severe impairment. *See* (*Id.*). Therefore, the Court construes these arguments as Brewster asserting that the ALJ erred at step two by finding that Brewster's Stevens-Johnson Syndrome was not a severe impairment.

In response, the Commissioner argues that Brewster "has not demonstrated that the ALJ erred in finding that Stevens-Johnson syndrome was not a severe impairment, *i.e.*, that it did not result in a significant limitation on her ability to do basic work activities during the relevant period at issue in this case," and "[e]ven if . . . the ALJ should have included Stevens-Johnson syndrome . . . in [Brewster's] list of severe impairments, [Brewster] has not shown that remand is warranted because she has made no showing of harm resulting from this purported error." (ECF No. 20, p. 4-5).

---

[2] Brewster states in her Brief, in relevant part, that "[t]he record includes a treating source letter from Dr. Hernandez-Garcia, dated July 1, 20179 [sic], documenting [Brewster's] inability to work due to her serious ailments." (ECF No. 19, p. 4) (citing (R. 466)). Brewster does not provide any argument as to how Dr. Hernandez Garcia's letter affects the ALJ's Decision or Brewster's disability determination. In fact, the ALJ did consider this letter within his Decision. *See* (R. 61) ("Further, on July 1, 2019, the claimant's physician, Juan Carlos I. Hernandez Garcia, M.D., opined that the claimant should be off of work due to her medical condition.") (citing (R. 466)). Therefore, the Court will not address Dr. Hernandez Garcia's letter further in this opinion.

At step two of the evaluation process, the ALJ must determine whether the claimant has a severe medically determinable physical or mental impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  Under the Social Security Administration regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1522(a), 416.922(a).  Further, the Fifth Circuit has held that "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quotations omitted) (second alteration in original).  The ALJ is assumed to "have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone*] or another of the same effect, or by an express statement that the construction [the Fifth Circuit] give[s] to 20 C.F.R. § 404.1520(c) (1984) is used."  *Id.* at 1106.

In his Decision, the ALJ stated in relevant part:

> An impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.

(R. 59-60).  The Court finds that the ALJ clearly articulated the correct legal standards as outlined in the Social Security Administration regulations and by the Fifth Circuit.

In turn, the Court will now address whether the ALJ's finding that Brewster's Stevens-Johnson Syndrome was not severe is supported by substantial evidence.  In his Decision, the ALJ found, in relevant part:

The claimant also alleged Stevens-Johnson syndrome as a severe impairment (Hearing Testimony). The evidence shows that in 2016 and 2017, the claimant was treated conservatively for Stevens-Johnson Syndrome, which was characterized by pain in her eyes and stomach, followed by a rash in her lower back and extremities. Although the record shows that the claimant was treated for back pain and migraines, and mental health symptoms, it does not document symptoms or treatment specific to Stevens-Johnson Syndrome. For example, aside from occasional reports, the record does not document significant symptoms such as facial swelling, red rash, and blisters on the face. The record shows that the claimant generally had no rash. For these reasons, the claimant's Stevens-Johnson Syndrome is determined to be non-severe.

(R. 61) (internal citations omitted). Brewster argues that this finding was "circular logic" that the ALJ used to "dismiss[] the record of medical evidence." (ECF No. 19, p. 3) (citing (R. 61)). To support her contention, Brewster cites to the record to show that Brewster "was diagnosed with Steven[s-]Johnson syndrome" and that there was "extensive documentation of [Brewster's] Steven[s-]Johnson Syndrome, to include a variety of treatment plans." (*Id.* at p. 3-4). The Court fails to find any alleged "circular logic" in the ALJ's determination, but instead notes the ALJ's citations to the record regarding a diagnosis and conservative treatment in 2016 and 2017, and a lack of symptoms or treatment specific to Stevens-Johnson Syndrome.

As to Brewster's citations to the record showing that Brewster was diagnosed with Stevens-Johnson Syndrome, the Court finds that the ALJ did note Brewster's diagnosis of Stevens-Johnson Syndrome. *See* (R. 61). However, a diagnosis alone does not establish a disabling impairment. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). The inquiry instead is whether an impairment or combination of impairments affect the individual's ability to work. *Stone*, 752 F.2d at 1101.

To support an assertion that the ALJ's analysis is not supported by substantial evidence, Brewster argues that "[t]he record reflects extensive documentation of [Brewster's] Steven[s-]Johnson Syndrome, to include a variety of treatment plans." (ECF No. 19, p. 4) (citing (R. 405,

427, 432, 518, 677, 802-04, 806, 814, 818, 820, 829, 831)).  The Court notes, however, Brewster fails to articulate how her Stevens-Johnson Syndrome affected her ability to work.

As the ALJ noted in his opinion, Brewster's citations to the record "do[] not document symptoms or treatment specific to Stevens-Johnson Syndrome."  (R. 61).  Many of Brewster's citations to the record indicate a "history" of Stevens-Johnson Syndrome, without any findings that Brewster was currently suffering from symptoms of Stevens-Johnson Syndrome.  *See* (R. 427, 802-03, 806, 818, 829).  Further, Brewster's other citations do not show any treatment specific to Stevens-Johnson Syndrome.  *See* (R. 405, 432, 518, 677, 804, 814, 820, 831).

"Although, in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence, he may not ignore evidence that does not support his decision especially when that evidence is 'significantly probative.'"  *Jefferson v. Barnhart*, 356 F. Supp. 2d 663, 675 (S.D. Tex. 2004).  Here, the ALJ noted Brewster's previous history and conservative treatment for Stevens-Johnson Syndrome.  (R. 61).  Although the ALJ did not cite to all the same points in the record as Brewster,[3] the ALJ cited to those points in the record that reflected Brewster's history of Stevens-Johnson Syndrome, as well as the record indicating that Brewster "generally had no rash."  *See* (R. 61) (citing (R. 484, 498, 509, 1041).  Therefore, the Court finds that the ALJ did not ignore any significantly probative evidence that would not support the ALJ's Decision.

In short, Brewster has not shown how the ALJ's finding was not supported by substantial evidence.  The ALJ articulated and applied the correct legal standards.  Further, the ALJ did not ignore any significantly probative evidence, but instead cited to findings identical or similar to the points in the record cited by Brewster.  While Brewster may have issues in how the ALJ weighed

---

[3] The Court notes that both Brewster and the ALJ cite to page 806 of the Record.  *Compare* (R. 61), *with* (ECF No. 19, p. 4).

the evidence in the record, the Court, when applying the substantial evidence standard, may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's Decision,. *Masterson*, 309 F.3d at 272.  Accordingly, the Court finds that the ALJ did not err in finding that Brewster's Stevens-Johnson Syndrome was non-severe.

**B.**     ***Brewster Fails to Articulate How the ALJ's RFC Analysis Regarding Stevens-Johnson Syndrome has Prejudiced Her***

Brewster argues that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence "because the ALJ erred in his analysis by cherry-picking evidence to dismiss the extensive medical evidence of the Steven[s-]Johnson Syndrome."  (ECF No. 19, p. 2).  To support this contention, Brewster relies upon her own testimony that "she suffered from the rare Stevens-Johnson Syndrome, and that it disabled her with chronic pain and swelling."  (*Id.*) (citing R. 90, 105)).  Further, Brewster argues she "was seen at UMC ER on September 11, 2019[,] for swelling, numbness, and headaches, and the medical providers listed her active problem as Stevens[-]Johnson Syndrome."  (ECF No. 19, p. 4) (citing (R. 885-86)).

In response, the Commissioner argues that Brewster "has not demonstrated that the ALJ was required to include specific work-related functional limitations due to her Stevens-Johnson syndrome . . . beyond those included in the RFC finding."  (ECF No. 20, p. 6).

Assuming, *arguendo*, that the ALJ did erroneously omit Brewster's Stevens-Johnson Syndrome from his RFC determination, the Court finds that Brewster does not articulate how including that evidence would have resulted in a more restrictive RFC determination than the one formulated by the ALJ.  The Court should "not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that [she] was prejudiced in any way by the deficienc[y] [she] alleges."  *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996).

First, the ALJ considered Brewster's testimony regarding the symptoms that Brewster alleges originate from her Stevens-Johnson Syndrome, namely chronic pain and swelling, in his RFC determination.  *Compare* (R. 64) ("[Brewster] reported that she has swelling in her feet and has to use her cane every day to walk (Hearing Testimony). . . . Additionally, she reported difficulty sleeping at night due to pain (Hearing Testimony)."), *with* (ECF No. 19, p. 2) ("[Brewster] suffered from the rare Stevens-Johnson syndrome, and . . . it disabled her with chronic pain and swelling."). Further, the ALJ noted that Brewster was seen at UMC ER on September 11, 2019, but also noted that Brewster "was treated with Botox, Reglan, and Benadryl, with improvement."  (R. 65) (citing (R. 883, 885, 887)).

In sum, as analyzed above in Section III(c)(1)(A), the Court finds that the ALJ did not "cherry-pick" evidence from the record, but instead either incorporated Brewster's limitations in his RFC determination or relied upon medical findings contrary to Brewster's alleged limitations in his finding that Brewster's Stevens-Johnson Syndrome was a non-severe impairment.  (R. 61, 64); *see Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) ("[T]he ALJ has primary responsibility for resolving conflicts in the evidence.").  Accordingly, the Court finds no reversible error in the ALJ's RFC determination regarding Brewster's Stevens-Johnson Syndrome.

### 2. The ALJ's Failure to Consider Brewster's Cane Prescription is Harmless Error

Brewster argues that the ALJ's RFC determination is not supported by substantial evidence "because the ALJ erred in his analysis by cherry-picking evidence to dismiss the extensive medical evidence of . . . [Brewster's] cane prescription."  (ECF No. 19, p. 3).  To support this contention, Brewster relies upon her own testimony that her "loss of balance [] required her to rely on a cane." (*Id.*) (citing (R. 106)).  Further, Brewster cites to a prescription for a cane from Dr. Jesse Coleman's clinic on February 7, 2019.  (*Id.*) (citing (R. 733)).  Brewster argues that the VE "testified that use

of a cane would significantly 'erode' [Brewster's] ability to perform the jobs identified by the [VE]." (*Id.*) (citing (R. 120-21)).

In response, the Commissioner argues that "[a]lthough . . . the ALJ improperly stated that [the] record did not contain a prescription for a cane, 'a mistake in an ALJ's decision does not automatically render the entire decision unsupported by substantial evidence.'" (ECF No. 20, p. 7-8) (internal citation omitted) (quoting *Botsay v. Colvin*, 658 F. App'x 715, 718 (5th Cir. 2016)). Further, the Commissioner contends that Brewster "has not demonstrated" that the requirements to find that a hand-held assistive device medically required pursuant to the regulations "were satisfied in this case," and "even if the ALJ should have found that a cane was medically required and included it in the RFC, [Brewster] cannot show harmful error . . . as the [VE's] testimony indicates [Brewster] could still perform other work existing in significant numbers notwithstanding use of a cane." (*Id.* at 8-9).

A claimant's RFC is "the most [the claimant] can still do despite their limitations." 20 C.F.R. § 416.945(a)(1). The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the relevant medical and other evidence and determine the claimant's abilities despite his or her physical and mental limitations. *See* 20 C.F.R. 416.945(a)(3). The ALJ must consider the limiting effects of an individual's impairments, even those that are not severe, and any related symptoms. *See id.* § 416.945(e). The relative weight to be given to the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (per curiam). "[T]he ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record." *Bessey v. Berryhill*, 1:18-CV-000078-AWA, 2019 WL 1431599, at *4 (W.D. Tex. Mar. 29, 2019); *see Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

"[T]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."  SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

Here, the ALJ noted in his Decision Brewster's testimony "that she has swelling in her feet and has to use her cane every day to walk."  (R. 64).  Further, the ALJ states that "the record documents [Brewster's] use of a cane for walking, but *does not appear to include a prescription from a physician*."  (R. 65) (citing (R. 498, 508, 819)) (emphasis added).  The Court, however, finds that the ALJ erred in finding there was not a prescription from a physician, as the record indicates that Dr. Jessie D. Coleman prescribed Brewster a cane on February 7, 2019, to be used "as directed" due to her "[l]ow back pain."  (R. 733).

Violation of a regulation constitutes reversible error and requires remand only when a reviewing court concludes that the error is not harmless.  *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).  Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error.  *Id.*; *see also Bean v. Barnhart*, 454 F. Supp. 2d 616, 621 (E.D. Tex. 2006) ("Judicial review of the Commissioner's decision is deferential, and courts adhere to a wise convention to not reverse and remand an administrative case 'in quest of a perfect opinion' unless there is reason to believe that a remand might lead to a different result.").

Although the ALJ erroneously found that Brewster did not have a prescription from a physician for use of her cane, the ALJ did note that "physical examinations throughout the record showed normal gait, and no tenderness to palpation in the cervical or thoracic spine, or paraspinal spasms."  (R. 65) (citing (R. 498-99, 833, 1036, 1560)).  Furthermore, the ALJ considered that

"[Brewster's] providers sometimes noted she had decreased sensation to light touch in the bilateral lower extremities in the dermatomal distribution of L4-S1, and tenderness to deep palpation in the lumbar spine, with range of motion limited due to pain."  (R. 65) (citing (R. 498-99, 509, 1036)). The ALJ, however, also noted that Brewster's providers "observed that her motor strength in the bilateral upper and lower extremities was 5/5, she had normal sensation in the upper and lower extremities bilaterally, negative Romberg sign and no cerebellar deficits or signs of upper motor neuron damage."  (R. 65) (citing (R. 883)).  Therefore, although the ALJ erred in finding that Brewster did not have a prescription from a physician for use of her cane, the Court finds that the ALJ did in fact consider the medical evidence in the record regarding Brewster's ability to ambulate.[4]

Furthermore, the ALJ relied upon the VE's testimony regarding whether work existed in significant numbers in the national economy.  (R. 70-71).  Without the need for a cane to ambulate, the VE identified a total of 156,500 jobs in the national economy that a person with Brewster's RFC could perform: office helper, 21,400 employed nationally; copy machine operator, 10,400 employed nationally; and merchandise marker, 124,700 employed nationally.  (R. 70, 118). Brewster contends that the VE "testified that use of a cane would significantly 'erode' [Brewster's] ability to perform the jobs identified by the [VE]."  (ECF No. 19, p. 3) (citing (R. 120-21)).

---

[4] Brewster further argues that "the record reflects an erroneous dismissal of the medical evidence surrounding Plaintiff's cane prescription as the medical expert erroneously missed the cane prescription in Exhibit 4/F, 295, and was unaware of the MRI evidence documented in Exhibit 4F 272-3."  (ECF No. 19, p. 3) (citing (R. 97)).  Notably, the medical expert was asked directly about Brewster's cane prescription at the telephonic hearing and responded with her opinion.  (R. 97) (after being asked if the medical expert saw a medical need for the cane in light of the cane prescription, the medical expert responded "I think [the cane prescription] would be only due to subjective complaints. I didn't see anything that would be objective.").  Furthermore, Brewster contends in her Brief that "[d]uring the telephonic cross-examination, the expert pulled up the MRI record via her phone and summarily dismissed the MRI evidence."  (ECF No. 19, p. 3) (citing (R. 98-100)); *see* (R. 99) (after being asked about whether the MRI evidence supported the need for a cane to ambulate, the medical expert responded "I don't really think so . . . I think combined with her complaints, it would be the natural progression of things to have the examiner say, okay, well, you know, we can give you a cane if you think that helps you, but I don't see anything that they recommended, for instance, like surgery or anything other than the ESIs they've done.").  After review of the record, the Court finds Brewster's arguments to be without merit.

However, Brewster mischaracterizes the VE's testimony.  The VE testified that the required use of a cane to ambulate "would erode *some* of [the occupations the VE listed] . . . [by] maybe 25 percent . . . at the most."  (R. 120-21) (emphasis added).

As the Commissioner correctly notes in his Brief, "[e]ven after reducing the job numbers by twenty-five percent [for the use of a cane], the VE identified over 117,000 jobs available in the national economy . . . ."  (ECF No. 20, p. 9).  This number of available jobs in the national economy is significantly more than the amount the Fifth Circuit has found sufficient to support a step five finding in previous cases.  *See, e.g.*, *Pekrul v. Barnhart*, 153 F. App'x 329, 331 (5th Cir. 2005) (finding that 5,983 jobs in the state of Texas and 79,900 jobs in the national economy satisfied the significant number requirement).  Therefore, the Court finds that the VE testified that jobs still existed in significant numbers in the national economy if Brewster was required to use a cane to ambulate.

In summary, Brewster has failed to meet her burden in showing how the ALJ's failure to consider the cane prescription prejudiced her in any way.  The ALJ considered the medical evidence of Brewster's normal gait and motor strength, and the VE testified that jobs still existed in significant numbers in the national economy even if Brewster was required to use a cane to ambulate.  Accordingly, the Court finds that any error in omitting the cane prescription and use of a cane from the RFC finding is harmless error, since it is inconceivable that a different administrative conclusion would have been reached if the ALJ had properly considered Brewster's cane prescription.  *See Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012).

3. **The ALJ Properly Considered Brewster's Chronic Pain Syndrome When Formulating the RFC[5]**

Brewster argues that the ALJ's RFC determination is not supported by substantial evidence "because the ALJ erred in disregarding the extensive medical evidence of chronic pain syndrome" and that "[a]lthough the ALJ cites to the medical evidence substantiating [Brewster's] well-documented diagnosis and treatment for chronic pain syndrome, he failed to conduct the required analysis as set forth under the SSA rules." (ECF No. 19, p. 4) (citing (R. 65)). To support this contention, Brewster cites to points in the record showing chronic pain syndrome diagnoses and treatment plan. (*Id.* at 4-5).

In response, the Commissioner argues that Brewster "has not demonstrated that the ALJ was required to include specific work-related functional limitations due to her . . . chronic pain syndrome beyond those included in the RFC finding." (ECF No. 20, p. 6).

A claimant's RFC is "the most [the claimant] can still do despite their limitations." 20 C.F.R. § 416.945(a)(1). The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the relevant medical and other evidence and determine the claimant's abilities despite his or her physical and mental limitations. *See* 20 C.F.R. 416.945(a)(3). The ALJ must consider the limiting effects of an individual's impairments, even those that are not severe, and any related symptoms. *See id.* § 416.945(e). The relative weight to be given to the evidence is within the

---

[5] Brewster also contends that the ALJ committed a step two error since "[t]he medical evidence clearly shows that Brewster's . . . chronic pain syndrome [is] severe, chronic and well[-]documented with extensive medical evidence." (ECF No. 19, p. 5-6). However, when an ALJ does not find a claimant's condition to be severe but does continue the analysis to discuss and include the condition in the claimant's RFC, any step two error is deemed harmless. *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) ("Even if an impairment is deemed 'severe' . . . this fact does not require a remand when the Secretary has gone beyond the second step, as here, as not all 'severe' impairments are disabling."). Here, the ALJ did not find that Brewster's chronic pain syndrome was a severe impairment but did consider her chronic pain syndrome when formulating his RFC determination. *See* (R. 65-68). Therefore, the Court finds that any error at step two regarding Brewster's chronic pain syndrome is harmless error.

ALJ's discretion.  *Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (per curiam). "[T]he ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record."  *Bessey v. Berryhill*, 1:18-CV-000078-AWA, 2019 WL 1431599, at *4 (W.D. Tex. Mar. 29, 2019); *see Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

"To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain."  *Ripley*, 67 F.3d at 556; *see also* 20 C.F.R. § 404.1529(b).  In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ examines all the available evidence.  *See* 20 C.F.R. § 404.1529(c)(1).  The ALJ must consider whether the claimant's statements about the intensity, persistence, and limiting effects of their symptoms are consistent with the objective medical evidence.  *See id.* §§ 404.1529(a), (c)(4).  Further, it is the province of the ALJ to weigh competing medical opinions.  *See Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) (per curiam) ("[T]he determination of residual functional capacity is the sole responsibility of the ALJ.").  "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve."  *Masterson*, 309 F.3d at 272 (citation and internal quotes omitted).

Here, Brewster's main contention appears to be that the ALJ "[d]isregard[ed] large amounts of evidence erroneously [by using] the conclusory language that 'After considering the evidence of record, the undersigned finds that [Brewster's] medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that [Brewster's] statements concerning the intensity, persistence and limiting effects of these symptoms are not generally consistent with the evidence (SSR 16-3p).'"  (ECF No. 19, p. 5) (quoting (R. 67)).  While this language would be "conclusory" on its own, the Court finds that the ALJ instead followed this

language with a detailed explanation as to why he found Brewster's allegations to be not entirely consistent with the evidence.

The ALJ articulated three reasons why he found that Brewster's statements concerning the intensity, persistence, and limiting effects of her symptoms were not generally consistent with the evidence.  "The first reason is the inconsistency between the claimant's allegations and the objective medical evidence . . . ."  (R. 67).  The ALJ supported this reason by noting that Brewster "has not generally received the type of medical treatment one would expect for a totally disabled individual."  (R. 67).  Although the ALJ noted Brewster "did undergo injections for her impairments . . . the record reflects that the steroid injections in her sacroiliac joint and Botox injections for her migraines were generally successful in relieving the symptoms."  (R. 67).  Further, the ALJ found that "the medical records reveal that the [prescribed] medications [for the alleged impairments] have been at least partially effective in controlling [Brewster's] symptoms."  (R. 67).

Next, the ALJ noted that "[t]he second reason the [ALJ] finds [Brewster's] allegations not entirely consistent with the evidence is [Brewster's] many reportedly intact activities of daily living."  (R. 67).  The ALJ further noted that Brewster "described daily activities, both in writing and at the hearing, that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  (R. 67).

Further, the ALJ noted that "[t]he third reason the [ALJ] finds [Brewster's] allegations not supportive of the ultimate finding in this case is the inconsistency between [Brewster's] allegations and the medical opinion of medical expert, Alice Cox, M.D., which the [ALJ] has found to be persuasive in making a determination of [Brewster's] residual functional capacity."  (R. 67).  The ALJ further noted that "[o]verall, the medical analysis described in the medical expert's statement

is not generally consistent with [Brewster's] allegations of total disability and therefore negatively affects [Brewster's] allegations."  (R. 67).  The medical expert's opinion "that [Brewster] was limited to light work" included review of "the MRI showing degenerative disc disease and treatment including sacroiliac injections" as well as "the imaging and physical examinations showing decreased sensation to light touch in the bilateral lower extremities in the dermatomal distribution of L4-S1, and tenderness to deep palpation in the lumbar spine, with range of motion limited due to pain."  (R. 68).

Finally, the ALJ stated that "[t]o the extent that [Brewster's] allegations of limitation are consistent with the evidence, the [ALJ] has accommodated them in the [RFC]."  (R. 67). Specifically, the ALJ accounted for Brewster's degenerative disc disease, migraines, and obstructive sleep apnea.  (R. 68).

In sum, the Court finds that the ALJ did not rely upon "conclusory language."  Instead, the ALJ weighed contrary medical evidence and fully accounted for the limitations stemming from Brewster's chronic pain syndrome.  *See Masterson*, 309 F.3d at 272 ("[C]onflicts in the evidence are for the Commissioner and not the courts to resolve.") (citation and internal quotes omitted). Furthermore, Brewster has failed to articulate how any error by the ALJ resulted in a less restrictive RFC determination.  *See Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) (holding that a court should "not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that [she] was prejudiced in any way by the deficienc[y] [she] alleges."). Accordingly, the Court finds no basis to overturn the ALJ's Decision on these grounds.

Additionally, Brewster argues that the Fifth Circuit in *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) warns against the ALJ "playing doctor" and making his or her own independent medical assessments.  *See* (ECF No. 19, p. 6).  However, as analyzed above, the ALJ either

incorporated Brewster's limitations or relied upon medical findings contrary to Brewster's alleged limitations.  (R. 64-69); *see Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) ("[T]he ALJ has primary responsibility for resolving conflicts in the evidence.").  Accordingly, the Court finds that the ALJ did not "play doctor," but instead either incorporated Brewster's limitations in his RFC determination or relied upon contrary medical records.

Further, Brewster cites to *Newton*, in which the Fifth Circuit found that the ALJ "improperly" rejected the treating physician's medical opinions "without contradictory evidence from physicians who had examined or treated [the claimant] and without requesting additional information from the treating physician."  *Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).  Brewster appears to be arguing that, as in *Newton*, the ALJ "expressly relied on [his] own disbelief of [Brewster's] testimony and on the testimony of a medical expert who did not treat or examine [Brewster]."  (ECF No. 19, p. 6).  In other words, Brewster appears to argue that the treating physician's opinion should be given controlling weight.  *See* 20 C.F.R. § 404.1527(c)(2) (For claims filed before March 27, 2017, "[i]f [the ALJ] find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported . . . and is not inconsistent with the other substantial evidence . . . , [the ALJ] will give it controlling weight.").  However, based on the amendment for claims filed after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  *Id.* § 404.1420c(a); *see* (R. 58) (Brewster filed her claim on February 14, 2019).

In conclusion, the Court finds that the ALJ did not rely upon "conclusory language" but instead weighed contrary medical evidence and fully accounted for the limitations stemming from Brewster's chronic pain syndrome.  The Court further finds that the ALJ properly considered the

medical evidence and opinions in the record.  Accordingly, the Court finds that the ALJ properly considered Brewster's chronic pain syndrome in formulating his RFC determination.

## IV.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's Decision denying benefits is **AFFIRMED**.

**SIGNED** and **ENTERED** this 8th day of September, 2021.

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**